**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARK LEE WOLFE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JASON BRYANT, Warden, )<br>)<br>Respondent. ) | Case No. 14-CV-0104-JHP-TLW |

**OPINION AND ORDER**

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Mark Lee Wolfe, a state prisoner appearing pro se. Petitioner also filed a supporting brief (Dkt. # 2). Respondent filed a response (Dkt. # 9) and provided the state court records (Dkt. ## 9, 10) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 11). Also before the Court is Petitioner's motion to stay (Dkt. # 22). Respondent filed a response in opposition to the motion (Dkt. # 23), and Petitioner filed a reply to the response (Dkt. # 24). For the reasons discussed below, the Court denies both the motion to stay and the petition for writ of habeas corpus.

*BACKGROUND*

The facts of the case, as determined by the Oklahoma Court of Criminal Appeals (OCCA) in an unpublished opinion, Case No. F-2011-581, see Dkt. # 9-3, are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner fails to make the necessary showing. Therefore, the following factual summary by the OCCA is presumed correct:

> On March 9, 2005, Officer Danielle Bishop and Sergeant Gary Neece of the Tulsa Police Department were looking for wanted individuals at the Hawthorne Suites in Tulsa, Oklahoma as part of an interdiction operation. When reviewing the hotel guest register for the names of persons wanted by law enforcement, Officer Bishop saw Appellant Wolfe's name and recognized it because she had previously arrested him for possessing methamphetamine. The officers set up surveillance in the hotel parking lot and at approximately 1:50 a.m., they saw Wolfe drive into the

parking lot followed by another car. Wolfe got out of the car, opened the hood, retrieved something and placed it in a bag he was carrying. He opened the trunk and removed another item that he also placed in the bag. Officer Bishop approached Wolfe calling his name. When Wolfe stopped, Officer Bishop saw a plastic bag containing a white crystal substance protruding from the unzipped toiletry bag in Wolfe's hand. She arrested Wolfe, transported him to the police station, advised him of his rights and conducted an interview. During the interview, Wolfe admitted owning the drugs he had taken from the car. Forensic testing showed the white crystal substance contained methamphetamine and the total weight of the drugs found was in excess of 600 grams.

(Dkt. # 9-3 at 2).

The State charged Petitioner with Trafficking in Illegal Drugs, After Former Conviction of Two Felonies (Count 1); Failure to Affix a Drug Tax Stamp, After Former Conviction of Two Felonies (Count 2); and Unlawful Possession of Paraphernalia (Count 3), in Tulsa County District Court, Case No. CF-2005-1158. Dkt. # 9-1 at 1; Dkt. # 9-3. A jury convicted Petitioner on all counts and recommended sentences of life imprisonment without the possibility of parole (Count 1), four years imprisonment (Count 2), and one year imprisonment (Count 3). Dkt. # 9-3 at 1. The trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to run consecutively. Id. Attorney C. Rabon Martin represented Petitioner at trial. Id. at 22.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Dkt. # 9-1. Attorney Lisbeth L. McCarty represented Petitioner on appeal. Id. Petitioner raised twelve (12) propositions of error, as follows:

Proposition 1: The trial judge erred by denying a continuance and thereby forcing counsel to be ineffective in arguing the motion to suppress.

Proposition 2: The warrantless search and seizure in this case were unlawful; therefore, all evidence obtained as a result is not admissible.

|  |  |
|---|---|
| Proposition 3: | The trial judge erred by failing to recuse himself. |
| Proposition 4: | The jury panel was tainted. |
| Proposition 5: | The trial judge erred by allowing Appellant's statements to be admitted at trial. |
| Proposition 6: | The trial judge prohibited Mr. Wolfe from presenting a complete defense. |
| Proposition 7: | An evidentiary harpoon deprived Appellant of a fair trial and due process of law. |
| Proposition 8: | Prosecutorial misconduct deprived Appellant of a fair trial. |
| Proposition 9: | The State failed to meet its burden of proving that Mr. Wolfe was sane. |
| Proposition 10: | The trial judge erred by failing to instruct the jury as to the consequences of a not guilty verdict. |
| Proposition 11: | Appellant received ineffective assistance of counsel. |
| Proposition 12: | Cumulative errors deprived Appellant of a fair trial. |

Id. In an unpublished opinion, entered June 28, 2013, in Case No. F-2011-581, the OCCA affirmed the trial court's Judgment and Sentence. See Dkt. # 9-3.

On October 21, 2013, Petitioner filed his third application for post-conviction relief.[1] See Dkt. # 9-4. The trial court denied the application finding that "Petitioner has already raised the issues he raises in his Application on direct appeal. Since Petitioner has failed to demonstrate a sufficient reason why these issues would be inadequately presented, they are barred by *res judicata*."

---

[1] In his first and second applications for post conviction relief, Petitioner sought a direct appeal out of time. The OCCA granted Petitioner's request for an appeal out of time as raised in his second application for post conviction relief. See Dkt. # 9-4 at 2.

Id. at 8. Petitioner appealed to the OCCA. In his post-conviction petition in error, Petitioner raised five (5) propositions of error, as follows:

| | |
|---|---|
| Proposition 1: | The trial judge erred by denying a continuance and thereby forcing counsel to be ineffective in arguing motion to suppress. |
| Proposition 2: | The warrantless search and seizure in this case was unlawful: therefore, all evidence obtained as a result is not admissible. |
| Proposition 3: | The trial judge erred by failing to recuse himself. |
| Proposition 4: | Cumulative errors deprived Petitioner of a fair trial. |
| Proposition 5[2]: | Petitioner claims appellant counsel was also ineffective. |

(Dkt. # 9-8). The OCCA declined jurisdiction and dismissed the post-conviction appeal because "Petitioner failed to attach to the Petition in Error, a certified copy of the District Court Order being appealed, as required by Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals." Dkt. # 9-5.

On March 7, 2014, Petitioner filed a federal petition for writ of habeas corpus (Dkt. # 1), raising the same five (5) grounds of error presented to the OCCA on post-conviction appeal. On June 16, 2016, Petitioner filed a motion to stay this habeas action while he returns to state court to exhaust three new propositions of error, identified as follows:

| | |
|---|---|
| Proposition 1: | The United States Supreme Court's ruling in City of Los Angeles California v. Patel, 135 S. Ct. 2443 (2015), should be considered a new substantive constitutional rule that was retroactive on state collateral review. |
| Proposition 2: | Federal constitution requires state collateral review courts to give retroactive effect to new substantive rules of federal constitutional law under the Teague framework. |

---

[2] Petitioner identified Proposition 5 as subsection A under Propositions 1 and 4 of his petition in error.

>   Proposition 3:   Petitioner suffered an Eighth Amendment violation as cruel and unusual punishment with respect to the point that Petitioner was sentenced to life without parole for a non-violent crime not once but twice.

(Dkt. # 22). Respondent contends that the Court should deny the motion because "Petitioner fails to raise any error in the Oklahoma Court of Criminal Appeals' decision" in Propositions 1 and 2 and because the OCCA would procedurally bar the claim in Proposition 3. See Dkt. # 23.

*ANALYSIS*

**I.    Motion to Stay**

In Petitioner's motion to stay, filed more than two years after he filed his petition for writ of habeas corpus, Petitioner requests that this action be stayed so that he can return to state court to exhaust available state remedies for the three proposed propositions of error set forth above. See Dkt. # 22. Petitioner explains that he was unable to present proposed propositions 1 and 2, both based on City of Los Angeles v. Patel, 135 S. Ct. 2443 (2015) (finding municipal ordinance requiring hotels to allow police inspection of their guest registries on demand to be unconstitutional), to the state courts prior to filing his petition for writ of habeas corpus because the Supreme Court's ruling in Patel was not entered until over a year after he filed his habeas petition. Dkt. # 24 at 4. Petitioner also asserts ineffective assistance of appellate counsel and his own "extremely limited resources and deficient understanding" of the legal system as cause for failing to raise proposed proposition 3 on direct and post-conviction appeal. Id. at 8.

The United States Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (citations omitted). To exhaust a claim, Petitioner must have "fairly presented" that specific claim to the state's highest

court. See Picard v. Connor, 404 U.S. 270, 275-76 (1971). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). However, the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996 "dramatically altered the landscape for federal habeas corpus petitions" by preserving the "total exhaustion" requirement of Rose v. Lundy, 455 U.S. 509, 518-19 (1982), but at the same time imposing a one-year statute of limitations on the filing of federal petitions. Rhines v. Weber, 544 U.S. 269, 274 (2005). "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Id. at 275.

In Rhines, the Supreme Court held that when faced with a "mixed petition" containing both exhausted and unexhausted claims, a district court could issue a stay to afford the petitioner a chance to return to state court to raise the unexhausted claims. Id. at 278. A motion to stay should be granted where (1) a petitioner shows "good cause for his failure to exhaust," (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277.

Here, Petitioner fails to show good cause for his failure to exhaust. In his reply, Petitioner states that he has not exhausted proposed propositions 1 and 2 because the "claims could not have

been raised until after the Supreme Court's decision in Patel was rendered." Dkt. # 24 at 4. While this is true, it has been over a year since the Supreme Court handed down Patel, and Petitioner has still not attempted to exhaust the claims in state court. Petitioner filed a motion to amend in this case to include claims based on Patel less than a month after Patel was announced.[3] See Dkt. # 14. Petitioner also filed the instant motion to stay before expiration of the one year limitations period. Therefore, Petitioner was clearly aware of Patel and that he needed to exhaust state court remedies. As to proposed proposition 3, Petitioner attributes his failure to raise the claim on direct or post-conviction appeal to ineffective assistance of appellate counsel and to his limited knowledge of the law. Even so, despite being aware of his claims, Petitioner did not file a subsequent application for post-conviction relief in the state courts and has not shown "good cause" for his failure to exhaust.

In addition, all three of the proposed claims are time barred. Assuming, without finding, that Petitioner's proposed claims based on Patel involve a constitutional right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," then, under 28 U.S.C. § 2244(d)(1)(C), a one year limitations period on claims based on Patel began to run from the date of the Patel decision. Patel was decided on June 22, 2015. Therefore, Petitioner had until June 23, 2016, to raise a claim based on Patel. See U.S. v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline). The filing of the motion to stay does not serve to make the proposed claims timely since the claims are not properly before the Court.

---

[3]The Court denied the motion to amend, finding that review of Petitioner's Fourth Amendment claim raised in Ground 2 of the petition – to the extent review is not precluded by Stone v. Powell, 428 U.S. 465 (1976) – was limited to determining whether the OCCA's adjudication of the claim was "contrary to" or an "unreasonable application of" Supreme Court precedents in existence at the time the OCCA rendered its decision. See Dkt. # 20 at 3. Because Patel had not been decided and was not before the OCCA when Petitioner's direct appeal was resolved, the Court could not consider Patel. Id.

Had Petitioner filed an application for post-conviction relief raising claims based on Patel before June 23, 2016, the application would have tolled the one year statute of limitations. See 28 U.S.C. § 2244(d)(2). However, Petitioner did not file an application for post-conviction relief in the state district court on or before June 23, 2016. Also, the pendency of the instant federal case does not serve to toll the federal limitations period under 28 U.S.C. § 2244(d)(2). See Duncan v. Walker, 533 U.S. 167 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)). Therefore, absent a basis for equitable tolling of the limitations period, the one-year limitations period has now expired as to any habeas claims based on Patel.

Similarly, the statute of limitations for the claim raised in proposed proposition 3 has also expired. The one-year limitations period for that claim began to run, under 28 U.S.C. § 2244(d)(1)(A), when Petitioner's convictions became final. Although Petitioner's petition, filed March 7, 2014, is timely, proposed proposition 3, as identified in the motion to stay, is clearly time-barred absent a basis for equitable tolling of the limitations period.

To be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)), so as to prevent him from timely filing his habeas petition. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "show specific facts to support his claim of extraordinary circumstances and due diligence." Id. (citation and internal quotation marks omitted). As Petitioner provides no

facts to show that extraordinary circumstances prevented him from filing a subsequent post-conviction application in the state courts, Petitioner is not entitled to equitable tolling.

Lastly, a claim of actual innocence may overcome the bar resulting from the one-year statute of limitations. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. Bousley v. U.S., 523 U.S. 614, 623-24 (1998). Petitioner does not claim that he is actually innocent. As a result, the actual innocence exception is inapplicable in this case.

Therefore, because Petitioner has not shown good cause for his failure to exhaust state remedies, and because the proposed unexhausted claims are time-barred, the motion to stay is denied.

## II.   Petition for Writ of Habeas Corpus

### A.   Exhaustion

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Lundy, 455 U.S. 509, 510 (1982). Petitioner presented Grounds 1-4 to the OCCA on direct appeal. He raised Ground 5 on post-conviction appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

### B.   Claims Adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citation omitted). The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (citation and internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citations omitted).

### 1. Ground 1: Failure to Grant Continuance

In Ground 1, Petitioner contends that "[t]he trial judge erred by denying a continuance and thereby forcing counsel to be ineffective in arguing [the] motion to suppress." Dkt. # 1 at 6. Petitioner avers that his "[d]efense counsel died from cancer after this case and was not available for questioning about any of the events of this case. Petitioner's absentee counsel was not prepared to argue [the] motion to suppress." Id. Rejecting this claim on direct appeal, the OCCA stated that:

> [t]he record shows that the rulings denying defense counsel's request for a continuance and Wolfe's motion to suppress were made in Wolfe's other Tulsa County case instead of this one. The rulings now challenged by Wolfe had no bearing on this case and cannot be complained of in this appeal.

(Dkt. # 9-3 at 3).

"[B]road discretion must be granted trial courts on matters of continuances." Morris v. Slappy, 461 U.S. 1, 11 (1983). The Tenth Circuit has noted that, "[a] trial judge's decision to deny a motion for continuance constitutes an abuse of discretion only if the denial was 'arbitrary or unreasonable and materially prejudiced the [defendant].'" See Phillips v. Ferguson, 182 F.3d 769, 775 (10th Cir. 1999) (citation omitted). Whether denial of a continuance constitutes an abuse of discretion,

> turns largely upon the circumstances of the individual case[,] . . . including: "the diligence of the party requesting the continuance, the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance, the inconvenience to the opposing party, its witnesses, . . . and the harm that appellant might suffer as a result of the . . . court's denial of the continuance."

Case v. Mondragon, 887 F.2d 1388, 1396 (10th Cir. 1989) (citations omitted). In a habeas proceeding, the abuse of discretion "must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." Id. (citation and internal quotation marks omitted).

11

Here, the OCCA made a finding of fact that the continuance at issue was requested and denied in a different case involving Petitioner. Dkt. # 9-3 at 3. A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not shown, by clear and convincing evidence, that the OCCA's factual finding was incorrect. Therefore, the factual finding is presumed correct and the denial of a continuance in a different case did not render Petitioner's trial fundamentally unfair. The Court denies habeas relief on Ground 1.

### 2.     Ground 2: Warrantless Search and Seizure

In Ground 2, Petitioner contends that "Officer Bishop conducted a search of petitioner as a matter of course. This was an overt violation of the 4th Amendment's protection from unreasonable searches." Dkt. # 2 at 12. According to Petitioner, "Officers Bishop and Neece learned from viewing the hotel registry that Petitioner had obtained a room at Hawthorne Suites. The police then became involved in surveilance [sic]." Id. (citations omitted). Petitioner also alleges that "once Officer Bishop completed her visual search assuring that petitioner was unarmed, she had no probable cause to seize the bag" where she found drugs and that "[t]he entire surveilance [sic] process appears to be retaliatory." Id. at 12, 13. On direct appeal, the OCCA concluded that Petitioner had "no reasonable expectation of privacy in guest registration records" and that "the district court's ruling upholding [the search] under the plain view doctrine" was supported by the record. Dkt. # 9-3 at 4, 5.

In Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that, where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

12

unconstitutional search and seizure was introduced at trial. The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim. Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978). The opportunity for full and fair consideration detailed in Stone "includes, but is not limited to[,] the procedural opportunity to raise or otherwise present a Fourth Amendment claim[] and the full and fair evidentiary hearing contemplated by Townsend v. Sain, 372 U.S. 293 (1963)." Cannon v. Gibson, 259 F.3d 1253, 1261 (10th Cir. 2001) (citation omitted).

Here, the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claims. Prior to trial, Petitioner filed a motion to suppress the evidence found as a result of the warrantless search. See Dkt. # 9-9. He also filed a "supplemental proposition" to his motion to suppress, along with a supporting brief, specifically arguing that the police officers violated his constitutionally protected privacy rights by inspecting the hotel register without a warrant. See Dkt. ## 9-10, 9-11. The trial judge conducted a suppression hearing before trial, see Dkt. # 10-2, Tr. Mot. Hr'g, and denied the motion to suppress. Id. at 94-95. As noted above, the OCCA considered and rejected Petitioner's Fourth Amendment claims on direct appeal. Dkt. # 9-3 at 3-6.

Because the state courts provided an opportunity for full and fair litigation of Petitioner's claims, this Court is precluded from considering the issues raised in Ground 2. See Stone, 428 U.S. at 494; see also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and

13

recognition and application of correct Fourth Amendment standards). Therefore, the Court denies habeas relief on Ground 2.

### 3.     Ground 3: Failure to Recuse

In Ground 3, Petitioner contends that his due process rights were violated when the trial judge failed to recuse himself. Dkt. # 1 at 9. Petitioner states that "[t]he judge in this case had previously dismissed a case with the same defendant and this is cause to believe that the judge could not be impartial and that due to this previous case the judge was biased." Id. On direct appeal, the OCCA concluded that "[t]he judge's statements and rulings neither demonstrate a bias against Wolfe nor otherwise show he could not fairly preside in this matter." Dkt. # 9-3 at 7.

The Fourteenth Amendment's Due Process Clause requires a fair trial in a fair tribunal. Withrow v. Larkin, 421 U.S. 35, 46 (1975). Further, a trial must proceed before a judge with no actual bias against the defendant or interest in the outcome of his particular case. Bracy v. Gramley, 520 U.S. 899, 905, 908-09 (1997) (allowing discovery in habeas case where petitioner's trial judge had later been convicted of taking bribes in criminal cases); In re Murchison, 349 U.S. 133, 138-39 (1955) (finding denial of due process where trial judge had previously served as a one-man "judge-grand jury" in the contempt case); Tumey v. Ohio, 273 U.S. 510, 523 (1927) (stating that it is a violation of due process for a criminal defendant to be tried by a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case"). The Court's inquiry "is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." Caperton v. A. T. Massey Coal Co., 556 U.S. 868, 881 (2009) (internal quotation marks omitted).

Petitioner alleges that the trial judge, Judge Jesse S. Harris, was biased against him because of Judge Harris's previous encounter with Petitioner. Petitioner contends that:

> Judge Harris demonstrated prejudice throughout petitioner's trial, acting in ways that prevented defense from presenting a full defense. Judge Harris instructed petitioner that he had to accept the deal offered by the prosecution prior to seating of any jurors at trial or never. In this sense Judge Harris acted as a prosecutor and prohibited prosecution from making any other offers. There were several times when the judge would not allow defense to complete a record at the bench following an unfavorable ruling for the defense.

(Dkt. # 2 at 18 (citations omitted)).

Petitioner has not presented evidence or argument demonstrating that the OCCA's finding that the trial court judge was not biased against Petitioner was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. To obtain habeas relief on this claim, Petitioner must present compelling evidence of judicial bias. Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994). Nothing in the record suggest that there was an unconstitutional potential for bias against Petitioner or that the trial judge was in a position affecting his ability to remain neutral. Petitioner does not specify, and it is not clear from the record, how Judge Harris prevented his defense counsel from presenting a full defense. Although Judge Harris warned Petitioner that he must accept the State's proffered plea deal before the jury was seated, if at all, see Dkt. # 10-5, Tr. Vol. I of II at 49-52, Petitioner has not shown that this admonition was a demonstration of the trial judge's lack of neutrality or actual bias. Additionally, a review of the trial transcripts shows that Judge Harris allowed defense counsel ample time to make a complete record during conferences both at the bench and in chambers. See Dkt. # 10-7, Tr. Vol. III at 30-39, 60-62, 64-69, 70-74, 82-84, 86-88, 97-99, 185-89, 190-93, 202-04; Dkt. # 10-8, Tr. Vol. IV at 36-39, 47-48. Because nothing in the record suggests that the trial judge was in a position affecting his

15

ability to remain neutral, or that there was an unconstitutional potential for bias, Petitioner has failed to show that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on Ground 3.

### 4.   Ground 4: Cumulative Error

In Ground 4, Petitioner contends that "[t]he cumulative effect of all the errors in this case have [sic] deprived the petitioner of a fair trial." Dkt. # 1 at 11. On direct appeal, the OCCA concluded that "[t]here were no errors, either individually or when considered together, that denied Wolfe a fair trial." Dkt. # 9-3 at 21.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." U.S. v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (citation and internal quotation marks omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citation omitted). "[T]he task merely consists of aggregat[ing] all the errors that have been found to be harmless and analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (citation and internal quotation marks omitted).

In this case, the Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Therefore, habeas relief is denied on Ground 4.

C.   **Procedural Bar (Ground 5: Ineffective Assistance of Appellate Counsel)**

In Ground 5, Petitioner alleges that his appellate counsel was ineffective. See Dkt. # 2 at 20-24. Specifically, Petitioner alleges that appellate counsel:  1) had inadequate information "to properly advocate Petitioner's case" due to the illness and subsequent death of trial counsel, 2) failed to argue that "due to trial counsel's failures, necessary motions were not timely filed, nor was petitioner properly represented before Judge Harris," and 3) "failed to dispute statements made by Officer Bishop regarding the placement of drugs [that were] contradictory." See id. Petitioner raised these claims on post-conviction appeal. See Dkt. # 9-8 at 26-27. The OCCA declined jurisdiction and dismissed the appeal, stating that "Petitioner failed to attach to the Petition in Error, a certified copy of the District Court Order being appealed, as required by Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals . . . As Petitioner has provided an insufficient record for review, the court **DECLINES** jurisdiction and **DISMISSES** this matter." See Dkt. # 9-5.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750;

see Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied to "similar" claims evenhandedly "in the vast majority of cases." Id. at 986 (internal quotation marks omitted).

Applying the principles of procedural bar to this case, the Court finds that Petitioner's claims of ineffective assistance of appellate counsel are procedurally barred. The OCCA's procedural bar, based on Petitioner's failure to provide a certified copy of the district court order, is an "independent" state ground because state law – Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals – provided "the exclusive basis for the state court's holding." See Maes, 46 F.3d 979, 985 (10th Cir. 1995). Additionally, the procedural bar was an "adequate" state ground because the OCCA requires strict adherence to procedural rules and consistently dismisses appeals which do not comply with the rules. See Johnson v. Champion, 288 F.3d 1215, 1226-27 n.3 (10th Cir. 2002) (concluding that the OCCA's declination of jurisdiction based on Rule 5.2(C) constitutes an independent and adequate state procedural ground).

As a result, the Court will deny habeas corpus relief on Ground 5 based on the procedural default doctrine unless Petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of the claims. Coleman, 501 U.S. at 750; Maes, 46 F.3d at 985. The "cause and prejudice" exception requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). The "fundamental miscarriage of justice" exception requires

a petitioner to demonstrate that he is "actually innocent" of the crime for which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner does not allege that any external cause prevented him from complying with the OCCA's procedural rules. Petitioner also does not claim that he is actually innocent. Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that the claims contained in Ground 5 are procedurally barred. Coleman, 501 U.S. at 724. For that reason, the Court denies Petitioner's request for habeas corpus relief on Ground 5.

### III.   Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253. A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citation omitted). As to claims denied on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 484.

After considering the record in this case, the Court concludes a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the OCCA's

decision is debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 937-38 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable. The Court denies a certificate of appealability.

*CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Petitioner's motion to stay (Dkt. # 22) is **denied**.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 9TH day of September, 2016.

James H. Payne
United States District Judge
Northern District of Oklahoma